UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASETEK HOLDINGS, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COOLER MASTER CO., LTD., et al.,<br><br>Defendants. | Case No. 13-cv-00457-JST<br><br>**ORDER DENYING MOTION TO STAY ACTION AS TO '764 PATENT**<br><br>Re: ECF No. 40 |

Before the Court is Defendants' motion to stay all proceedings in this patent infringement action with respect to one of the two patents asserted by Plaintiffs, Mot., ECF No. 40, which patent is currently undergoing *inter partes* reexamination by the U.S. Patent & Trademark Office. For the reasons discussed below, the Court will deny the motion.

**I.    BACKGROUND**

Plaintiffs Asetek Holdings, Inc. and Asetek A/S (collectively, "Asetek") filed this patent infringement action asserting its U.S. Patent Nos. 8,240,362 and 8,245,764 against Defendants Cooler Master Co., Ltd., Cooler Master USA, Inc. (collectively, "Cooler Master") on January 31, 2013. ECF No. 1.[1] The patents relate to computer cooling systems. Previously, on August 27, 2012, Asetek asserted the same two patents in an action against CoolIT Systems, Inc. Case No. 12-cv-4498-EMC, ECF No. 1. The cases were consolidated for claim construction, and on December 3, 2013, Judge Chen issued a consolidated Claim Construction Order construing certain terms in the two patents. ECF No. 35. Trial in this case is scheduled to begin December 1, 2014. ECF No. 46.

On September 15, 2012, shortly after the case against it was filed, CoolIT requested an

---

[1] All "ECF" references are to the docket in this case, unless otherwise noted.

*inter partes* reexamination ("IPR") of each of the eighteen claims of the '764 patent.  Rader Decl. ISO Mot. to Stay, ECF No. 41, Ex. A.  The U.S. Patent & Trademark Office ("PTO") instituted IPR proceedings on October 26, 2012.  Id., Ex. B.  CoolIT moved to stay the action against it, and on January 23, 2013, Judge Chen denied the motion without prejudice because the PTO denied reexamination of the '362 patent, and "[t]here is sufficient potential overlap in the litigation of these two patents that counsels in favor of keeping them both on the same litigation track."  Case No. 12-4498, ECF No. 59 (Jan. 23, 2013).  In addition, Judge Chen found that Asetek could be prejudiced by a stay because CoolIT and Asetek are "direct competitors, and Asetek has provided evidence to support its claim that a stay could have 'effects that would be difficult to reverse after the fact.'"  Id. at 2 (quoting Interwoven, Inc. v. Vertical Computer Sys., No. 10-cv-4645-RS, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8 2012)).

On September 3, 2013, the PTO issued an Action Closing Prosecution rejecting all claims as anticipated by prior art or obvious pursuant to 35 U.S.C. §§ 102(b) and 103(a).  Id., Ex. C.  Asetek sought withdrawal of the claim rejections on October 3, 2013, pursuant to 37 CFR 1.951(a).  Id., Ex. D.  CoolIT submitted comments on November 4, 2013, pursuant to 37 CFR 1.951(b).  Id., Ex. E.  The PTO is currently reviewing the comments.

Cooler Master seeks a stay of all proceedings concerning the '764 patent, but not the '362 patent, pending resolution of the *inter partes* reexamination and any subsequent appeals.  Mot. at 1.

## II.   LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (internal citations omitted).  While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the Court must decide stay requests on a case-by-case basis.  Comcast Cable Commc'ns Corp., LLC v. Finisar Corp., No. 06-cv-04206-WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("From a case management perspective, the possible benefits must be weighed in each instance against the possible drawbacks.").

1    Though a stay is never required, it may be "particularly justified where the outcome of the
2  reexamination would be likely to assist the court in determining patent validity and, if the claims
3  were canceled in the reexamination, would eliminate the need to try the infringement issue." In re
4  Cygnus Telecomms. Tech., LLC, Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)
5  (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)).  Indeed, "an
6  auxiliary function [of the reexamination] is to free the court from any need to consider prior art
7  without the benefit of the PTO's initial consideration." In re Etter, 756 F.2d 852, 857 (Fed. Cir.
8  1985).  Nevertheless, "[t]here is no per se rule that patent cases should be stayed pending
9  reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation."
10 Tokuyama Corp. v. Vision Dynamics, LLC, No. 08-cv-2781-SBA, 2008 WL 4452118, at *2 (N.D.
11 Cal. Oct. 3, 2008) (quoting Soverain Software LLC v. Amazon .Com, Inc., 356 F. Supp. 2d 660,
12 662 (E.D. Tex. 2005)).  See also Comcast, 2007 WL 1052883, at *1 ("If litigation were stayed
13 every time a claim in suit undergoes reexamination, federal infringement actions would be dogged
14 by fits and starts.  Federal court calendars should not be hijacked in this manner.").
15   In determining whether to stay a case pending reexamination, courts consider the following
16 factors:  (1) the stage and history of the litigation; (2) whether a stay would simplify the issues in
17 question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear
18 tactical disadvantage to the non-moving party.  Cygnus, 385 F. Supp. 2d at 1023.

### III. ANALYSIS

20   Pursuant to the Leahy-Smith America Invents Act ("AIA"), Pub. L. 112-29, Sept. 16,
21 2011, 125 Stat 284, any "person who is not the owner of a patent may file with the [PTO] a
22 petition to institute an *inter partes* review of the patent." 35 U.S.C. § 311(a).  IPR petitioners
23 "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be
24 raised under [35 U.S.C.] section 102 or 103 and only on the basis of prior art consisting of patents
25 or printed publications."  35 U.S.C. § 311(b).
26   The AIA was meant "to establish a more efficient and streamlined patent system that will
27 improve patent quality and limit unnecessary and counterproductive litigation costs."  Changes to
28 Implement *Inter Partes* Review Proceedings, Post–Grant Review Proceedings, and Transitional

*Program for Covered Business Method Patents*, 77 Fed. Reg. 48680-01, at *48680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100, *et seq.*). For example, the IPR timeline is more compressed than the timelines under either the predecessor *inter partes* reexamination procedure or the *ex parte* reexamination procedure. An IPR trial may not be instituted if the petitioner files a petition more than one year after it was served with a complaint alleging infringement of the patent. 35 U.S.C. § 315(b).

In order to institute an IPR trial, the PTO must determine that the petition presents "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," 35 U.S.C. § 314(a), which is a "more stringent [requirement] than the previous 'substantial new question of patentability' standard." Universal Electronics, Inc. v. Universal Remote Control, Inc., No. 12-cv-00329-AG, 2013 WL 1876459, at *2, ___ F. Supp. 2d ___ (C.D. Cal. May 2, 2013). The petitioner then has the burden of establishing lack of patentability by a preponderance of the evidence. 35 U.S.C. § 316(e). A dissatisfied party may appeal the final written decision of the Patent Trial and Appeal Board to the Federal Circuit Court of Appeals. 35 U.S.C. § 141.

In light of the PTO's Action Closing Prosecution, rejecting all of the '764 patent's claims, Cooler Master seeks a stay of this case with respect to the '764 patent, but not the '362 patent, pending the PTO's final decision and any subsequent appeal. Cooler Master argues that the parties' efforts in taking discovery, preparing expert reports, and briefing dispositive motions concerning the '764 patent would be wasted if the PTO makes its rejection of the claims final, and the Patent Trial and Appeal Board and Federal Circuit affirm the rejection on appeal.

**A.  Stage of the Proceedings and Simplification of the Issues and Trial of the Case**

The "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983). Where reexamination will address all of the claims at issue in the litigation, there is some probability that the reexamination will simplify the issues in question, and the trial of the case. AT&T Intellectual Prop. I v. Tivo, Inc., 774 F. Supp. 2d 1049,

1053 (N.D. Cal. 2011). Courts have also observed that where only some of the patents-in-suit are subject to reexamination and the litigation presents issues not before the PTO, a stay is less appropriate. See, e.g., Xilinx, Inc. v. Invention Inv. Fund I LP, No. 11-cv-00671-EJD, 2012 WL 6003311, at *4 (N.D. Cal. Nov. 30, 2012) ("[N]otable is the fact that four of the patents-in-suit are not currently undergoing reexamination; the court will have to resolve all claims in dispute as to those patents. That being the case, waiting for the outcome of reexamination does nothing for that portion of the litigation."). Nevertheless, ordinarily, "[i]f any of the asserted claims are canceled, the ordeals of claim construction and trial will become unnecessary for those claims." Richtek Tech. Corp. v. UPI Semiconductor Corp., No. 09–cv–05659-WHA, 2011 WL 445509, at *3 (N.D. Cal. Feb. 3, 2011).

The simplification of the issues and trial of the case renders the stage of the proceedings at which the motion to stay is filed relevant. Where discovery has not yet been completed and a trial date has not been set, courts are more likely to issue stays. See Cygnus, 385 F. Supp. 2d at 1024; Target Therapeutics, Inc. v. SciMed Life Sys., Inc., No. 94-cv-20775-RPA, 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995). That is because an early stay may save the parties and the Court the unnecessary expenditure of significant resources. By contrast, a late stay necessarily produces less benefit and enhances the possibility of prejudice.

Here, both factors — the stage of the proceedings and the simplification of the issues — hinge primarily on the extent of overlap between the patents.

Both parties thus far in the litigation have maintained that the patents overlap extensively. The '362 and '764 patent are directed to computer liquid cooling systems. In its claim construction brief before Judge Chen, Cooler Master explained:

> The patents have similar specifications and share almost identical figures.[fn1] The general idea of liquid cooling of computer components is not unlike the wellknown concept of cooling an automobile engine with radiator coolant that circulates through a radiator. The system described in the patents includes a heat exchanging interface that contacts the hot component that needs cooling, typically the central processing unit ("CPU"). Cooling liquid circulates through two chambers on the other side of the heat exchanging interface by means of a pump. The '362 patent calls the part that combines the chambers, pump and the heat exchanging interface the "integrated unit." In the heat exchange portion of the

5

> integrated unit, the cooling liquid absorbs some of the heat from the CPU. The heated liquid then circulates through tubes and through a radiator where a fan driven by a motor dissipates the heat into the ambient air. More tubes carry the cooled liquid back to the inlet of the integrated unit.
>
> \*       \*       \*
>
> [fn1] Figures 1 through 16 are identical for both patents-in-suit, but the '764 patent includes additional Figures 17-20.

Case No. 12-cv-4498-EMC, ECF No. 137 at 1–2 (filed Oct. 15, 2013). For purposes of claim construction, the parties agreed that "certain similar claim terms in the two patents should be construed to have the same meaning," ECF No. 35 at 2. Indeed, three of the five terms Judge Chen construed were such overlapping terms.

In opposing a stay, Asetek adds that none of the discovery requests[2] distinguishes between the '362 and '764 patents. McCauley Decl. ISO Opp. to Mot. to Stay, ECF No. 50 ¶¶ 7–9. At oral argument, Cooler Master conceded this fact. Indeed, fact discovery will be completed on May 30, 2014, so little simplification of issues is possible with respect to fact discovery. On the other hand, neither party has submitted the actual discovery requests or responses, and interrogatories that may be directed at both patents as a group would not necessarily produce answers that are identical for each patent.

Despite its prior positions regarding the degree of overlap between the patents, Cooler Master, in requesting a stay, argues that "the patents' claims are somewhat different." ECF No. 51 at 1. In particular, Cooler Master argues that the '362 patent includes limitations involving "the arrangement of a two-chamber fluid 'reservoir,' pump, and heat exchanging interface in one integrated unit." Id. By contrast, the '764 patent is "more directed to the location of the stator and impeller of the pump within the double sided chassis and pump chamber of the cooling system." Id. That is the sole distinction Cooler Master has identified between the patents. On that basis, Cooler Master argues that a stay will narrow the scope of expert discovery and dispositive motions by an unspecified degree. At oral argument, Asetek took the position that a stay would produce minimal savings in expert time — on the order of two hours of testimony — and that each party only intends to utilize

---

[2] Asetek's opposition brief claims that neither the discovery requests nor the responses distinguish between the patents. But the McCauley declaration states only that the requests did not distinguish between them, and the date on which Cooler Master's responses were served.

one expert in this case. Cooler Master did not dispute this contention, and has not argued that trial of the '764 patent would necessitate the hiring of an additional expert or significant additional testimony.

Upon reviewing the patents at issue, the Court concludes that there is a significant, though not complete, degree of overlap between the two patents. The '764 patent is directed to the same type of cooling system as the '362 patent, but supplies additional detail concerning the pump component of the invention. The overlap is such that a stay would not produce meaningful simplification of the issues in or trial of this case. The patents' similarities also render Cooler Master's stay request at this late stage of the proceedings less appropriate,[3] because much, if any of the effort that could have been saved has already been expended: claim construction is complete, fact discovery is nearly complete, and only expert discovery, dispositive motions, and trial remain.

Because Cooler Master has not demonstrated in a concrete manner how a stay would simplify the issues, because fact discovery is nearly over and a trial date is set, and because the burden to establish the appropriateness of a stay rests with Cooler Master, the Court finds that the first two factors — the stage of the proceedings and the simplification of the issues and trial of the case — weigh against issuing a stay.

### B. Prejudice and Disadvantage

The last factor is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Delay alone does not usually constitute undue prejudice, because "parties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.'" KLA-Tencor Corp. v. Nanometrics, Inc., No. 05-cv-03116-JSW, 2006 WL 708661, at *3 (N.D. Cal. Mar. 16, 2006) (quoting Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at *2 (D. Del. May 14, 2003)). Nevertheless, in

---

[3] The Court's conclusion here should not be read as a criticism of Cooler Master's decision to wait until the PTO issued its Action Closing Prosecution on the '764 patent before bringing this motion. The existence of the ACP gives greater force to Cooler Master's arguments. The Court finds that a stay is not warranted because of the degree of overlap between the patents and the relatively late stage of the proceedings, not because of any conclusion that Cooler Master was dilatory in bringing the motion.

7

evaluating prejudice, "courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent." Id.  Such tactics include seeking reexamination on the "eve of trial or after protracted discovery." Id.

The District of Delaware has adopted a set of four sub-factors for evaluating prejudice that this Court finds helpful: "(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." Ever Win Int'l Corp. v. Radioshack Corp., 902 F. Supp. 2d 503, 508 (D. Del. 2012).

### 1. Timing of Reexamination Request

Because of the delay that may accrue by virtue of the PTO instituting an IPR trial on a patent-in-suit, this Court expects accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them. Provided an accused infringer is diligent, delay due to preparing an IPR petition, ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not unduly prejudice the patent owner.  Here, Cooler Master did not file an IPR petition because CoolIT had already done so when this case was filed.

This sub-factor is therefore neutral.

### 2. Timing of Request for Stay

As for the timing of the request for stay, the Court finds that Cooler Master acted reasonably in waiting to request a stay until the IPR trial had resulted in an Action Closing Prosecution.  Although stay requests during earlier stages of the IPR proceeding may be appropriate, and may avoid to a greater degree the unnecessary expenditure of resources, nothing in Cooler Master's conduct suggests that its decision was tactical.

This sub-factor is therefore neutral.

### 3. Status of Reexamination Proceedings

The status of the IPR trial does not weigh for or against a finding undue prejudice, as the PTO has already filed an Action Closing Prosecution rejecting all claims of the '764 patent as anticipated by prior art or obvious, though the Court is mindful that the process is not yet at an end, and may take up to some period of years to resolve.  The PTO may reverse course, and

1  reopen prosecution, or it may finalize the rejections, after which Asetek could appeal to the Patent

2  Trial and Appeal Board, and then the Federal Circuit.

### 4.  Relationship of the Parties

Courts recognize that, when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise.  See, e.g., Tric Tools, Inc. v. TT Technologies, Inc., No. 12-cv-3490-YGR, 2012 WL 5289409, at *2 (N.D. Cal. Oct. 25, 2012) on reconsideration, 2012 WL 6087483 (N.D. Cal. Dec. 6, 2012) (citing Allergan Inc. v. Cayman Chemical Co., No. 07-cv-1316-JVS, 2009 WL 8591844 at *1 (C.D. Cal. 2009)); Interwoven, 2012 WL 761692, at *3 ("The parties' status as direct competitors also weighs against a stay because it increases the likelihood of undue prejudice.").

Asetek argues that it faces an elevated risk of undue prejudice by virtue of the parties' status as direct competitors.  In support of that position, Asetek submits the declaration of its CEO, André Eriksen, who states that Cooler Master and Asetek are direct competitors, and that "CoolIT and then Cooler Master copied Asetek's technology and designs, and have been reaping substantial profits by undercutting Asetek's prices." Eriksen Decl. ISO Opp. to Mot. to Stay, ECF No. 49-6 ¶ 7.  In addition, Eriksen states that Cooler Master began selling products in 2012 that "copied" Asetek's, "severely undercutting both Asetek's and CoolIT's prices." Id. ¶ 9.  According to Eriksen, Cooler Master and CoolIT "have substantially eroded Asetek's prices and market share in the liquid cooling market . . . ." Id. ¶ 8.  For example, "Cooler Master has sold products at prices that are less than half of the price of competing and comparable Asetek-manufactured products . . . ." Id. ¶ 10.  Asetek has lowered its prices in the face of this competition.

Although Eriksen does not quantify the erosion of market prices or its market share, instead referring to the effect that Cooler Master and CoolIT have had on the market in vague terms, Cooler Master makes no attempt to contradict Eriksen's declaration.  It appears that the parties are direct competitors, and that the Cooler Master products to which Eriksen's declaration refers are the subject of this suit.  Without forming any opinion on the merits of Asetek's claims, the Court finds that a stay could produce undue prejudice, although the degree of prejudice is hard to estimate on this record.

Consequently, while the other sub-factors do not weigh in favor or against a finding of undue prejudice, the status of the parties as direct competitors and the risk of undue competitive harm create a risk of undue prejudice that weighs against issuing a stay.

## IV. CONCLUSION

This motion for stay presents a close question. On the one hand, the PTO's Action Closing Prosecution provides a significant reason to issue a stay, and Asetek's showing of undue prejudice based on its status as a direct competitor of Cooler Master is relatively thin. On the other hand, Asetek's showing is not disputed, and a stay seems likely to produce little simplification of the issues or of the and trial of the case. And while discovery has not ended, fact discovery is nearly over and claim construction has been completed. Finally, although the Court faces some possibility of inconsistent determinations if it denies a stay, that eventuality can be addressed if it becomes necessary. On balance, the Court concludes that Cooler Master has not carried its burden.

For the foregoing reasons, Cooler Master's motion to stay all proceedings with respect to the '764 patent is hereby DENIED.

**IT IS SO ORDERED.**

Dated: April 3, 2014

_____
JON S. TIGAR
United States District Judge

10