United States District Court
Northern District of California

1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    ASETEK DANMARK A/S,                    Case No.  13-cv-00457-JST
              Plaintiff,
8                                           **ORDER DENYING MOTION FOR**
                                            **SUMMARY JUDGMENT AND**
9         v.                                **DENYING MOTION TO EXCLUDE**
                                            **EXPERT TESTIMONY**
10   CMI USA, INC.,
                                            Re: ECF Nos. 86, 92
              Defendant.
11

12          Before the Court is CMI USA. Inc.'s Motion for Summary Judgment of (1) Invalidity of

13   U.S. Patent Nos. 8,240,362 and 8,245,764; and (2) Non-Infringement of U.S. Patent No.

14   8,240,362.  ECF No. 86.  Asetek also moves to exclude the testimony of Dr. Gregory P. Carman in

15   support of CMI's motion for summary judgment.  ECF No. 92.  For the reasons discussed below,

16   the Court will DENY both motions.

17   **I.      BACKGROUND**

18          Asetek brought this patent-infringement action against Defendants CMI USA, Inc., Cooler

19   Master Co., Ltd., and Cooler Master USA Inc. (collectively, "CMI"), alleging infringement of

20   U.S. Patent Nos. 8,240,362 ("'362 Patent"), and 8,245,764 ("'764 Patent").  The patents, both of

21   which are titled "Cooling System for a Computer System," relate to devices that use liquid to cool

22   computer components.  ECF No. 1 at 21, 26.  The patents are similar to each other and generally

23   describe devices that incorporate into a "reservoir" two chambers—either an upper and a lower

24   chamber or a pump chamber and a thermal exchange chamber—that are combined with a radiator

25   and pump to create an "integrated unit."  See ECF Nos. 86 at 1-3, 99 at 1-3.  The integrated unit is

26   the patents' "distinctive feature" because it is more compact and has fewer components than do

27   prior devices, which allow for easier installation and result in fewer leaks.  Id.  The devices are

28   designed to sit on top of, and cool, a computer's central processing unit.  Id.  As the cooling liquid

passes through one of the chambers and across the processing unit, it draws heat off the unit, and then releases it by way of the radiator and a fan.  Id.  The motorized pump forces the liquid through the various parts of the apparatus.  Id.

CMI moves for summary judgment of invalidity, claiming that the '764 and '362 Patents are both anticipated and obvious in light of prior art, and for summary judgment of noninfringement of claims 14, 15, and 17-19 of the '362 Patent.

## II.    JURISDICTION

Because this is a civil action arising under an Act of Congress relating to patents, this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1338.

## III.    MOTION TO EXCLUDE TESTIMONY

In its motion for summary judgment, CMI relies on the declaration of expert Dr. Gregory P. Carman.  See ECF Nos. 86, 87.  Asetek has moved to exclude "any and all opinions or testimony of Dr. Gregory P. Carman, and all references to or arguments based upon his opinions or testimony, related to the alleged invalidity or noninfringment of the [] Patents-in-suit, including Dr. Carman's declaration filed in support of . . . [CMI's] Motion for Summary Judgment."  ECF No. 92 at 1.  Asetek cites as a basis for its motion Rule 702 of the Federal Rules of Evidence.  Id.

In particular, Asetek contends that CMI "cannot demonstrate that Dr. Carman has any 'knowledge, skill, experience, training, or education' that qualifies him as an expert in the computer liquid cooling technology at issue in this litigation."  Id. at 5.

### A.    Legal Standard

Rule 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."  Fed. R. Evid. 702.  The law of the regional circuit dictates a district court's evaluation of expert testimony in patent cases.  See Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003) (holding that the decision to admit expert testimony presents a procedural question that is not unique to patent law and should follow the law of the regional circuit).  In the Ninth Circuit, "Rule 702 contemplates a *broad conception* of expert qualifications."  Hangarter v. Provident Life &

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Acc. Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (quoting Thomas v. Newton Int'l Enters., 42

2  F.3d 1266, 1269 (9th Cir. 1994)) (internal quotation marks omitted).  "Unlike an ordinary witness

3  . . . an expert is permitted wide latitude to offer opinions, including those that are not based on

4  firsthand knowledge or observation."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592

5  (1993).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence,

6  and attention to the burden of proof, not exclusion."  Primiano v. Cook, 598 F.3d 558, 564 (9th

7  Cir. 2010).  To testify as an expert in a patent case, an individual "need not be officially

8  credentialed in the specific matter under dispute."  Massok v. Keller Indus., Inc., 147 F. App'x

9  651, 656 (9th Cir. 2005).

10  **B.     Analysis**

11  The essence of Asetek's argument in support of its motion to exclude is that only those

12  experts who have prior experience specific to computer liquid cooling are qualified to render

13  opinions in this case.  But the permissive scope of Rule 702 is much broader.  See Abaxis, Inc. v.

14  Cepheid, No. 10-CV-02840-LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ("Rule 702

15  imposes no requirement that experts have personal experience in an area to offer admissible

16  testimony relating to that area.").

17  Here, Dr. Carman has a Ph.D. in Engineering Mechanics and has extensive experience and

18  knowledge in thermodynamics.  ECF No. 102-1.  Dr. Carman has worked in the Mechanical and

19  Aerospace Engineering Department at UCLA since 1992.  ECF No. 92-7.  He also holds two

20  patents on thermal exchange systems, one of which describes its potential application to "heat

21  generated from computers . . . reducing the need for cooling systems."  ECF Nos. 102-2, 102-3.

22  Despite Dr. Carman's recollection that he has not specifically worked on "liquid cooling for

23  computer platforms," CMI has sufficiently established Dr. Carman's knowledge, skill, experience,

24  training, or education to admit his expert testimony pursuant to Rule 702: he has an extensive

25  background in thermodynamics (the science underlying computer cooling systems), and also is

26  well-qualified in the field of mechanical engineering and therefore can opine on machines

27  designed for thermodynamic purposes, such as computer liquid cooling systems.  ECF No. 92-7.

28

United States District Court
Northern District of California

In its motion and reply, Asetek cites <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u>, 550 F.3d 1356, 1358 (Fed. Cir. 2008).  That case is easily distinguished from this one.  In <u>Sundance</u>, the Federal Circuit held that a district court erroneously admitted the expert testimony of a patent lawyer on the issues of infringement and validity.  <u>Id.</u> at 1364.  The court found that despite an "absence of *any suggestion* of relevant technical expertise," the district court allowed the lawyer to opine "on several issues which are exclusively determined from the perspective of ordinary skill in the art." <u>Id.</u> at 1361 (emphasis added).  In contrast, here, CMI has sufficiently established that Dr. Carman has far more than a "suggestion" of relevant technical expertise in thermal exchange and mechanical engineering.  <u>Id.</u>  Unlike in <u>Sundance</u>, where the defendants could not "demonstrate any possible relevancy or reliability of [the expert's] testimony as to technical matters in light of his lack of relevant technical expertise," Dr. Carman has sufficient relevant technical expertise, <u>id.</u> at 1364; his qualifications in the specific subject matter of liquid cooling for computers merely goes to the weight of his testimony.  <u>Primiano</u>, 598 F.3d at 564.  "Matters of weight, credibility and ultimate fact are for the fact-finder." <u>DSU Med. Corp. v. JMS Co.</u>, 296 F. Supp. 2d 1140, 1156 (N.D. Cal. 2003).

### C.      Conclusion

Rule 702 contemplates a broad conception of expert qualifications.  CMI has sufficiently demonstrated that Dr. Carman has the relevant knowledge, skill, experience, training, and education to qualify him as an expert.  Accordingly, the Court hereby DENIES Asetek's motion to exclude Dr. Carman's testimony.[1]

---

[1] There remains a question as to whether, given that this is a patent case, the Court must decide that Dr. Carman is a person of ordinary skill in the art of computer liquid cooling systems in order to give weight to his expert testimony regarding what a person of ordinary skill in the art would know or find obvious.  <u>Compare</u> <u>Sundance</u>, 550 F.3d at 1363 ("where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art."), <u>with</u> <u>EcoLab, Inc. v. FMC Corp.</u>, 569 F.3d 1335, 1346 (Fed. Cir. 2009) ("*Typically*, testimony concerning anticipation must be testimony from one skilled in the art") (citing <u>Schumer v. Computer Sys., Inc.</u>, 308 F.3d 1304, 1315 (Fed. Cir. 2005) (emphasis added). The Court need not resolve this question, however, because, even crediting all of Dr. Carman's testimony in

1   IV.    **MOTION FOR SUMMARY JUDGMENT**

2         A.     **Legal Standard**

3         Summary judgment is proper when the "pleadings, depositions, answers to interrogatories,

4   and admissions on file, together with the affidavits, show that there is no genuine issue as to any

5   material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

6   56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find

7   for the non-moving party, and "material" only if the fact may affect the outcome of the case.

8   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  All reasonable inferences must be

9   drawn in the light most favorable to the non-moving party.  Olsen v. Idaho State Bd. of Med., 363

10  F.3d 916, 922 (9th Cir. 2004).  These standards apply with full force to summary judgment

11  motions involving patent claims.  See Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1571

12  (Fed. Cir. 1984).

13        B.     **DISCUSSION**

14               1.     **Invalidity**

15                      a.     **Legal Standard**

16        Patents are presumed valid.  35 U.S.C. § 282(a).  A party challenging the validity of a

17  patent bears the burden of proving invalidity by clear and convincing evidence.  Pfizer, Inc. v.

18  Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007).  "Both anticipation under § 102 and

19  obviousness under § 103 are two-step inquiries."  Medichem, S.A. v. Rolabo, S.L., 353 F.3d 928,

20  933 (Fed. Cir. 2003) (citations omitted).  The first step is claim construction.  Id.  The second step

21  is a comparison of the properly-construed claim to the prior art.  Id.

22        For a claim to be anticipated under § 102, and thus invalid, "each claim element must be

23  disclosed, either expressly or inherently, in a single prior art reference, and the claimed

24  arrangement or combination of those elements must also be disclosed, either expressly or

25  inherently, in that same prior art reference."  Therasense, Inc. v. Becton, Dickinson & Co., 593

26  F.3d 1325, 1332-33 (Fed. Cir. 2010).  "Inherent anticipation requires that the missing descriptive

27

28  support of the motion for summary judgment, CMI would not prevail on the motion.

United States District Court
Northern District of California

material is 'necessarily present,' not merely probably or possibly present, in the prior art." Trintec

Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1295 (Fed. Cir. 2002) (citations omitted).

Whether prior art anticipates the accused device is a question of fact. Orion IP, LLC v. Hyundai

Motor Am., 605 F.3d 967, 974 (Fed. Cir. 2010).

Under 35 U.S.C. § 103, a patent claim is invalid as obvious "if the differences between the

subject matter sought to be patented and the prior art are such that the subject matter as a whole

would have been obvious at the time the invention was made to a person having ordinary skill in

the art."   To determine whether this test is met, the court examines four factors:  (1) the scope and

content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the

level of ordinary skill in the pertinent art; and (4) any relevant secondary considerations (i.e.,

objective indicia of non-obviousness). KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 406 (2007)

(quoting Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 15-18 (1966)).  Importantly, "a

patent composed of several elements is not proved obvious merely by demonstrating that each of

its elements was, independently, known in the prior art." KSR, 550 U.S. at 418.  On the other

hand, "when a patent simply arranges old elements with each performing the same function as it

has been known to perform and yields no more than one would expect from such an arrangement,

the combination is obvious." Id. (citation and internal quotations omitted).

The Federal Circuit has often employed the "teaching, suggestion, or motivation" ("TSM")

test to determine whether a particular combination of prior art would have been obvious to one of

ordinary skill in the art at the time of the invention. See In re Translogic Tech., Inc., 504 F.3d

1249, 1259-60 (Fed. Cir. 2007).  Under that test, a court asks whether prior art would have

provided a motivation, teaching, or suggestion to combine aspects of the prior art. Id. at 1259.

The U.S. Supreme Court has, however, cautioned that the TSM test should be applied in a flexible,

non-rigid fashion, taking into account "common sense" and "the inferences and creative steps that

a person of ordinary skill in the art would employ." KSR, 550 U.S. at 418-21.

United States District Court
Northern District of California

**b.** **The '362 Patent**

**(1)** **Anticipation by Ryu of Claims 14, 15, and 17-19**

Korean Patent No. 20-0314041 to Ryu ("Ryu") is prior art to the '362 Patent.  ECF No. 86 at 4.  Ryu describes a liquid cooling system for the central processing unit of a computer.  Id. CMI contends that Claims 14, 15, and 17-19 of the '362 Patent contain every limitation of Ryu, and therefore that those claims are anticipated by Ryu and are invalid.  Id. at 3-8.

Asetek disputes that Ryu anticipates the asserted claims.  In particular, Asetek contends that CMI has failed to show that: (1) Ryu discloses a "reservoir"[2] containing an upper and a lower chamber, (2) Ryu discloses an impeller with curved blades, and (3) Ryu's heat exchanging interface is removably attached or coupled to the reservoir, all of which are recited in independent claims 14 and 17 of the '362 patent.[3]  ECF No. 99 at 5.

The Court finds that summary judgment of anticipation by Ryu is unwarranted for two reasons.  First, Ryu does not disclose curved impeller blades, a limitation of the '362 Patent, either expressly or inherently.  Id. at 9.  Ryu's specification and the only drawing of Ryu disclose straight impeller blades.  Id. at 10 (citing Glaxo Inc. v. Novopharm Ltd., 52 F.3d 1043, 1047-48 (Fed. Cir. 1995) (holding that prior art does not anticipate if the prior art can be practiced in a way that yields a product without the allegedly inherent property)).  For this reason, the Court cannot find that curved impeller blades are necessarily present in Ryu, and that thus Ryu inherently discloses curved blades.

CMI responds that it need only show that the '362 Patent's curved impeller blades are the "natural result" flowing from Ryu.  ECF No. 106 at 5-6.  But even the "natural result" cases that

---

[2] In his claim construction order, Judge Chen construed "reservoir" for the purposes of the '764 and '362 Patents as "a receptacle or chamber for holding a liquid or fluid."  ECF No. 35 at 6-9. Judge Chen determined that the singular form of the term "reservoir" "indicates that a reservoir is only one receptacle and not many."  Id. at 8.

[3] Because claims 15, and 18 and 19 depend on claims 14 and 17, respectively, any limitations that are not present in claims 14 and 17 are necessarily not present in dependent claims 15, 18, and 19 as well.  See 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

United States District Court
Northern District of California

United States District Court
Northern District of California

CMI cites require, to prove inherent disclosure, that the claimed limitation be necessarily present in the prior art. Id. (citing Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1379 (Fed. Cir. 2003) (quotation omitted), and Smithkline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005)); see also Tilghman v. Proctor, 102 U.S. 707 (1880) (holding that "inherent" subject matter must not be occasionally present or accidentally present; the inherent subject matter must be inevitable from the prior art reference's disclosure). CMI fails to meet this test.

Second, there are conflicts in the expert testimony regarding the presence in Ryu of both (a) a reservoir, and (2) a heat-exchanging-interface that is removably attached to that reservoir. See ECF No. 99 at 5-11. The parties' experts disagree as to whether the upper and lower chambers of Ryu can be said to constitute a single "reservoir" as construed by Judge Chen. While CMI likens the two chambers disclosed in the '362 Patent to the pump driver and water jacket of Ryu, ECF No. 106 at 3-4, Asetek's expert maintains that Ryu's dual "components" are not comparable to the two "chambers" in the '362 Patent's reservoir because they are separate and separable, connected only by tubing, and made up of different materials, ECF No. 99-2, ¶¶ 63-66.

Likewise, the parties' experts disagree as to whether Ryu's water jacket component, the bottom of which constitutes Ryu's purported "heat exchanging interface" is "removable," and whether, given the language in the '362 Patent, the heat exchanging interface must be separably removable, or whether it is considered "removable" to the extent that it constitutes the bottom wall of a chamber that, in its entirety, can be removed.

Construing this conflicting expert testimony in the light most favorable to Asetek, the Court finds that there is a genuine dispute of material fact that precludes summary judgment of anticipation. See Olsen, 363 F.3d at 922 (explaining that, on summary judgment, the court must view the evidence in the light most favorable to the non-moving party); Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 979-80, 982 (9th Cir. 1980) (reversing a district court's grant of summary judgment where the parties provided conflicting expert testimony, but the district court granted summary judgment by relying solely on the moving party's expert testimony); Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., 843 F. Supp. 2d 1018, 1024-25 (N.D. Cal. Jan. 6,

8

1   2012) (relying on expert declarations to find that a genuine dispute of material fact precluded

2   summary judgment).

3         CMI has not carried its burden to show the absence of a genuine dispute of material fact as

4   to whether Ryu anticipates claims 14, 15, and 17-19 of the '362 Patent.

5                        **(2)       Obviousness over Ryu in view of Hamman and/or Koga**

6         CMI asserts that, to the extent the Court finds that Ryu does not disclose, either expressly

7   or inherently, curved impeller blades, the '362 Patent is obvious over Ryu in light of U.S. Patent

8   No. 6,529,376 ("Hamman") and/or U.S Patent No. 7,544,049 ("Koga") because both Hamman and

9   Koga disclose curved impeller blades.  ECF No. 86 at 8-10.  The parties do not dispute the identity

10   of the prior art and the level of ordinary skill of one in the art; the parties accept that Hamman,

11   Koga, and Ryu are relevant prior art, and that a "person or ordinary skill in the art at the time of

12   the invention would have completed college level course work in thermodynamics, fluid

13   mechanics, and heat transfer, and would have had two or more years of experience in designing

14   liquid cooling systems for computers."  ECF No. 86 at 3-4.

15         Asetek has provided evidence of secondary considerations that tends to refute a finding of

16   obviousness.[4]  ECF No. 99 at 17.  Specifically, Asetek contends that commercial success, copying

17   by others, and long felt need, among other objective indicia of obviousness, show that the

18   inventions disclosed in the '362 and '764 Patents would not be obvious to one of ordinary skill in

19   the art.  ECF No. 99 at 17; ECF No. 99-2 at ¶¶ 39-57.  Asetek's evidence of secondary

20   considerations supports its case that summary judgment is not warranted here.

21         The remaining factual issues in the obviousness analysis are: (1) the scope and content of

22   _____

23   [4] While CMI mentions the secondary considerations factor in its opening brief in support of
    summary judgment, see ECF No. 86 at 8, it provides no argument in that brief on that factor.

24   Asetek points out this lack of argument in its opposition brief, and makes several arguments
    regarding secondary considerations.  See ECF No. 99 at 3, 17.  CMI makes its first secondary-

25   considerations arguments in its reply.  See ECF No. 106 at 11-14.  Because CMI raised its
    arguments regarding secondary considerations for the first time in its reply brief, the Court will

26   not consider those arguments.  Pirozzi v. Apple, Inc., 966 F. Supp. 2d 909, 918 n.3 (N.D. Cal.
    2013); Pierce-Nunes v. Toshiba Am. Info. Sys., Inc., No. 14-CV-00796-JST, 2014 WL 4674666,

27   at *6 (N.D. Cal. Sept. 15, 2014) ("The Court does not address arguments raised for the first time in

28   reply").

United States District Court
Northern District of California

9

1    the prior art, and (2) the differences between the prior art and the accused device.  On two key

2    questions, the parties continue to dispute the scope and content of the prior art and the differences

3    between the prior art and the accused device.

4           Specifically, the parties dispute whether Ryu and/or Hamman or Koga disclose a reservoir

5    with upper and lower chambers, and whether they disclose the limitation that the heat exchanging

6    interface is removably coupled to the reservoir.  ECF Nos. 99 at 11, 106 at 7.  Asetek's expert

7    opines that neither *Hamman* nor *Koga* discloses, teaches, or suggests "a reservoir" including "an

8    upper chamber and a lower chamber" as recited in the asserted claims of the '362 patent.  ECF No.

9    99-2.  Asetek's expert further opines that the prior art does not disclose, teach, or suggest that "the

10   heat exchanging interface" is "removably attached [or coupled] to the reservoir," as recited in the

11   asserted claims of the '362 patent.  Id.  And because both a reservoir and a removably coupled

12   heat exchanging interface are limitations of all asserted claims of the '362 Patent, a dispute about

13   the presence of those limitations in the prior art defeats the motion for summary judgment in its

14   entirety.

15          While the ultimate conclusion of obviousness is a question of law, that conclusion is

16   premised on the four questions of fact discussed in Section V.A.1 above.  See Graham, 383 U.S. at

17   17.  Where, as here, genuine disputes of material fact remain as to the four Graham factors, the

18   Court cannot reach a legal conclusion regarding obviousness.  See Liberty Lobby, 477 U.S. at

19   248-49.  Accordingly, the Court finds that genuine disputes of material fact preclude summary

20   judgment of obviousness as to the '362 Patent.

21                    **c.       The '764 Patent**

22                    **(1)       Anticipation by Koga**

23          CMI contends that summary judgment of invalidity is proper as to claims 1-15, 17, and 18

24   of the '764 Patent, because Koga anticipates those claims.  ECF No. 86 at 10.  Asetek counters

25   that CMI's anticipation argument hinges entirely on CMI's expert's opinion that Koga's "sucking

26   channel" is equivalent to the "thermal exchange chamber" recited in all claims of the '764 Patent,

27

28

United States District Court
Northern District of California

and that Asetek's expert disagrees as to whether the two are equivalent.  ECF No. 99 at 12-13.[5]

Asetek points to its expert's testimony disputing that Koga's sucking channel serves as a thermal exchange chamber.  Id.  In particular, Asetek's expert opines that Koga's sucking channel is too narrow to transfer any significant amount of heat from a central processing unit, and thus that it cannot serve as a thermal exchange chamber.  ECF No. 99-4 at 145 (page 15 of 16) ("the percentage of the heat transfer is such a small fraction that it's -- it's not really -- it wouldn't really be relevant as a cooling feature or as a thermal exchange feature").  Furthermore, Asetek contends that, in Koga, thermal exchange occurs in the pump chamber, not the sucking channel, as CMI contends.  ECF No. 99 at 12-13; ECF No. 99-2 at 52; see Koga, Figs. 7 & 8, items 21, 24, 24A.  Thus, the Court finds that CMI has failed to carry its burden to show the absence of a genuine dispute of material fact as to whether the '764 Patent's thermal exchange chamber is equivalent to Koga's sucking channel.  See Liberty Lobby, 477 U.S. at 248-49.

### (2)    Obviousness over Koga in view of Ryu and/or Duan

CMI argues that, to the extent the Court finds that Koga fails to disclose a reservoir that includes a pump chamber and a thermal exchange chamber, "it would have been obvious to one of ordinary skill to combine Koga with Ryu and/or Duan." ECF No. 86 at 19.  Asetek responds that, even if the Court finds that Koga does not disclose a reservoir including a pump chamber and a thermal exchange chamber, it would not have been obvious to an individual of ordinary skill in the art to combine Koga and/or Ryu or Duan to disclose such a limitation because neither Ryu nor Duan disclose a reservoir including a pump chamber and a thermal exchange chamber.  ECF No. 99 at 14.

For the reasons discussed in Section V.A.2.b. above, because genuine disputes of material fact remain as to whether (1) Koga discloses a thermal exchange chamber, (2) Ryu discloses a reservoir including a pump chamber and a thermal exchange chamber, and (3) Duan discloses a

---

[5] Asetek also argues that CMI's motion improperly relies on a PTO examiner's finding that the '764 Patent is invalid, but CMI has made clear that it "is not relying on the findings of the USPTO examiner or asking the Court to give them any weight." See ECF No. 106 at 9.  The Court will not rely on the PTO examiner's finding of invalidity.

United States District Court
Northern District of California

1   reservoir including a pump chamber and a thermal exchange chamber, the Court cannot conclude,

2   as a matter of law, that the '764 Patent is obvious over Koga in light of Ryu or Duan.

3   **(3)      Anticipation by Ryu**

4        CMI contends that Ryu anticipates all asserted claims of the '764 Patent.  ECF No. 86 at

5   20-24.  Asetek counters that it has demonstrated, via expert testimony, that a genuine dispute of

6   material fact remains on this issue, and therefore summary judgment is improper.  ECF No. 99 at

7   15-16.

8        In particular, the parties dispute the presence of a genuine issue of material fact as to

9   whether Ryu expressly or inherently discloses the following limitations in the '362 Patent: (1) a

10  reservoir having a pump chamber and a thermal exchange chamber; (2) an impeller having curved

11  blades; (3) a double-sided chassis; (4) a passage that fluidly couples the pump chamber and the

12  thermal exchange chamber and is offset from a center of the impeller; and (5) that features on the

13  heat-exchanging interface contain at least one of pins or fins.  ECF Nos. 99 at 15-16, 106 at 9-10.

14       As discussed in Section V.A.2.a. above, the Court finds that genuine disputes of material

15  fact remain at least as to whether Ryu discloses a reservoir and curved impeller blades.

16  Accordingly, the Court finds that CMI has failed to carry its burden to show that Ryu anticipates

17  the '764 Patent, and thus that the Court should grant CMI summary judgment of invalidity.

18  **(4)      Obviousness over Ryu in view of Koga and/or Duan**

19       CMI asserts a final ground of obviousness, namely, that to the extent that Ryu does not

20  disclose or suggest an impeller with a plurality of curved blades and a centrifugal pump, it would

21  have been obvious to one of ordinary skill in the art to combine Ryu with Koga or Duan.  ECF No.

22  86 at 24.  Asetek counters that even if the Court agrees that Ryu and Koga or Duan could be

23  combined to create a device with curved impeller blades, neither Ryu, Koga, nor Duan disclose a

24  reservoir that includes a pump chamber and a thermal exchange chamber, and that, therefore, the

25  combination of devices do not "disclose, teach, or suggest each and every feature of independent

26  claims 1, 10, and 15 of the '764 patent."  ECF No. 99 at 16.  Thus, by extension, Asetek argues

27  that the combination of Ryu and Koga or Duan do not render the remaining asserted dependent

28

1    claims of the '764 Patent invalid.  Id.  Moreover, Asetek argues, at a minimum, genuine issues of

2    material fact as to the scope and content of Ryu, Koga, and Duan preclude the Court from granting

3    summary judgment to CMI.

4            As explained in Sections V.A.2.a, V.A.3.a., and V.A.3.b. above, the Court agrees with

5    Asetek.  Genuine issues of material fact preclude this Court from concluding, as a matter of law,

6    that the asserted claims of the '764 Patent would be obvious to one of ordinary skill in the art in

7    light of Ryu, Koga, and Duan.

                        **2.       Noninfringement**

                            **a.       Legal Standard**

10           "A determination of patent infringement consists of two steps: (1) the court must first

11   interpret the claim, and (2) it must then compare the properly construed claims to the allegedly

12   infringing device."  Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 905-06 (Fed. Cir.

13   2005).  "To support a summary judgment of noninfringement it must be shown that, on the correct

14   claim construction, no reasonable jury could have found infringement on the undisputed facts or

15   when all reasonable factual inferences are drawn in favor of the patentee."  Netword, LLC v.

16   Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001).  To survive a motion for summary

17   judgment of noninfringement, a patentee must set forth competent evidence that "features of the

18   accused product would support a finding of infringement under the claim construction adopted by

19   the court, with all reasonable inferences drawn in favor of the non-movant."  Intellectual Science

20   & Tech., Inc. v. Sony Elecs., Inc., 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citations omitted).  To

21   prove infringement, an accused device must infringe each limitation of the patented device.

22   Playtex, 400 F.3d at 906.

                            **b.       Claims 14, 15, and 17-19 of the '362 Patent**

24           Asetek contends that certain of CMI's products infringe claims 14 and 15 of the '362

25   Patent, and that the same products, plus three others (collectively, the "Seidon and Nepton

26   products"), infringe claims 17-19 of the '362 Patent.  ECF No. 86 at 25.  CMI contends that this

27   Court should grant summary judgment of noninfringement as to these claims, as the Seidon and

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Nepton products do not meet the "removably attached" and "removably coupled" limitations of

2  independent claims 14 and 17, respectively.  Id.  Because claim 15 depends on claim 14, and

3  claims 18 and 19 depend on claim 17, CMI contends that the "removably attached/coupled"

4  limitations are incorporated into those claims as well and summary judgment of noninfringement

5  is therefore proper as to them.  See 35 U.S.C. § 112(d).

6      Claim 14 requires "the heat exchanging interface" to be "removably attached to the

7  reservoir," while claim 17 requires "the heat exchanging interface" to be "removably coupled to

8  the reservoir."  CMI explains that the reservoirs and heat exchanging interfaces in the Seidon and

9  Nepton products are attached by triangular-headed "security screws," which "are intended to

10  prevent users from detaching" those parts.  ECF No. 86 at 25.  Accordingly, CMI argues, "the

11  Seidon and Nepton products do not meet the 'removably attached' element of claims 14 and 17 of

12  the '362 patent and therefore do not infringe them."  Id.

13      Asetek counters that summary judgment of noninfringement is improper because genuine

14  disputes of material fact remain as to whether the accused products contain the removably attached

15  limitation of the '362 Patent.  ECF No. 99 at 17-20.

16      The Court finds that a genuine dispute of material fact remains as to whether the Seidon

17  and Nepton products meet the "removably attached/coupled" limitation.[6]  Despite the use of what

18  CMI calls "security" screws, the heat exchanging interface and the reservoir components of the

19  accused products could be considered removably attached by an individual of ordinary skill in the

20  field, because the two components can be separated by unscrewing the screws.  By contrast,

21  CMI's expert has opined that the screws were intended to prevent consumers' removal of the heat

22  exchanging interface from the reservoir.

23      Accordingly, the Court cannot grant CMI summary judgment of noninfringement because

24

25  [6] CMI contends that the Court should construe "removably" in this order to resolve the issue of
    noninfringement.  ECF No. 106 at 14-15.  The Court finds that "removably coupled" and
26  "removably attached" do not require construction.  See Bd. of Trustees of Leland Stanford Univ.
    v. Roche Molecular Sys., Inc., 529 F. Supp. 2d 967, 976 (N.D. Cal. 2007) ("[Claim] terms do not
27  need to be construed [if] they are neither unfamiliar to the jury, [nor] confusing to the jury . . . .")
    (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

28

14

genuine disputes of material fact prevent the Court from doing so.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES CMI's motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  November 2, 2014

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California