UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>    Plaintiff,<br><br>    v.<br><br>CMI USA, INC.,<br><br>    Defendant. | Case No.  13-cv-00457-JST<br><br>**ORDER ADOPTING ASETEK'S PROPOSED FINAL JURY INSTRUCTIONS 25 AND 27**<br><br>Re: ECF No. 205 |

On December 12, 2014, the parties submitted revised joint proposed final jury instructions to the Court, ECF No. 205, in connection with a hearing held that morning.  While the parties largely agree on the instructions, two instructions remained in dispute after Friday's hearing: Instruction 25 (Definition of Reasonable Royalty) and Instruction 27 (Calculating Damages In Cases of Contributory Infringement).  CMI also requested that the Court add language to Instruction 25 tracking factor 15 in Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) ("the amount which a prudent licensee . . . would have been willing to pay as a royalty and yet be able to make a reasonable profit"), modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971).  The Court invited the parties to submit supplemental authority regarding Instruction 25, and otherwise took the two instructions under submission.

The Court will give Instruction 25 as proposed by Asetek, although adding back in certain language agreed upon by both parties at Friday's hearing, but not adding in language regarding Georgia-Pacific factor 15..  While whether a particular royalty might be higher than an infringer's profit is a factor to be considered in setting a reasonable royalty, Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971), there is no requirement that

1  a reasonable royalty be equal to or lower than an infringer's profits.  Golight, Inc. v. Wal-Mart
2  Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004) ("There is no rule that a royalty be no higher
3  than the infringer's net profit margin.") (quoting State Indus., Inc. v. Mor-Flo Indus., Inc., 883
4  F.2d 1573, 1580 (Fed. Cir. 1989); adidas Am., Inc. v. Payless Shoesource, Inc., No. CV 01-1655-
5  KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) (same).  No language proposed by either
6  party captures this distinction, and the Court concludes that it is unnecessary and unwise to give an
7  instruction that states Georgia-Pacific factor number 15 in isolation, particularly when it could
8  easily be misconstrued as an erroneous bright-line test.  For the sake of clarity, the Court's
9  approved version of Instruction 25 is attached as an Exhibit to this order.

With regard to Instruction 27, CMI offers the Northern District of California's Model Patent Jury Instruction, while Asetek's instruction modifies the same model instruction based on the Federal Circuit's decision in Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009).  The Court finds that Asetek's proposed instruction is the more accurate.

In Lucent, the Federal Circuit clarified that the calculation of damages for contributory infringement is not tied directly to the number of proven instances of direct infringement.  580 F.3d at 1323-24, 1334 (rejecting the argument that, for method claims, a patentee alleging infringement must "tie its damages claim to demonstrated instances of direct infringement," and stating "we have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence.").  The Northern District Model instruction that CMI offers, however, contains a statement that could be read to suggest otherwise.  See ECF No. 205 at 47 ("Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Asetek must further prove the number of direct acts of infringement of the '362 patent . . . .").  Accordingly, the Court will adopt Asetek's proposed Instruction 27.

**IT IS SO ORDERED.**

Dated: December 14, 2014

JON S. TIGAR
United States District Judge

# **EXHIBIT A**

## **DISPUTED FINAL INSTRUCTION NO. 257 RE REASONABLE ROYALTY – DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

1    This is just an example of how a reasonable royalty might be determined. Whatever
methodology is employed to calculate damages, the reasonable royalty must reflect business
realities to ensure that the damages awarded are adequate to compensate the patent owner for the
infringement. Accordingly, a reasonable royalty rate need not be based solely on sales revenue.
Instead, depending on the circumstances, the parties to the hypothetical negotiation may base a
reasonable royalty in whole or part on other measures of value, including profits or non-monetary
benefits. The testimony of experts may assist you in determining not only the amount of damages
that are adequate to compensate for the infringement, but also how those damages should be
estimated. But it is up to you, based on the evidence, to decide the royalty that is appropriate in
this case.