UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>    Plaintiff,<br><br>    v.<br><br>CMI USA, INC.,<br><br>    Defendant. | Case No. 13-cv-00457-JST<br><br>**ORDER DENYING MOTION FOR CONTEMPT SANCTIONS**<br><br>Re: ECF No. 400 |

Before the Court is Asetek Danmark A/S's ("Asetek") motion for contempt sanctions against CMI USA, Inc. ("CMI") and Cooler Master Co., Ltd. ("Cooler Master") (collectively, "Defendants") for violation of the court's final consent judgment. ECF No. 400. The Court will deny the motion.

## I.  BACKGROUND[1]

Asetek brought this patent-infringement action against Defendants alleging infringement of U.S. Patent Nos. 8,240,362 ("'362 Patent"), and 8,245,764 ("'764 Patent").[2] The patents, both of which are titled "Cooling System for a Computer System," relate to devices that use liquid to cool computer components. ECF No. 1 at 21, 26. Asetek asserted that several products, including the Cooler Master Nepton 140XL and Nepton 280L (collectively, the "Nepton Devices"), infringed its patents. ECF No. 1; ECF No. 130 at 1. In September 2014, the parties stipulated to dismiss Asetek's claims against Cooler Master with prejudice. ECF No. 84.

---

[1] Earlier orders have set forth the background of this dispute in detail. *See, e.g.*, ECF Nos. 249, 322, 359. The Court here provides only the limited facts necessary to provide the context for the motion before it.

[2] Plaintiff Asetek Holdings, Inc. was originally also a plaintiff but was dismissed in October 2014 for lack of standing. ECF No. 112.

The case was tried to a jury in December 2014. ECF No. 189. On December 17, 2014, the jury returned a verdict in Asetek's favor, finding that the accused products infringed on both the '764 and '362 patents. ECF Nos. 218, 219.

Thereafter, the parties filed various post-trial motions, including Asetek's motion for a permanent injunction. ECF Nos. 266, 267, 269. This Court granted the motion for entry of permanent injunction and found that Cooler Master should also be subject to the injunction as a party in "active concert or participation" with CMI. *See Id.* at 28-29 (citing to Fed. R. Civ. P. 65(d)).

The injunction states in full:

> (1) As used herein, "Infringing Products" shall mean the following Cooler Master products: Seidon 120M, Seidon 120XL, Seidon 240M, Seidon 120V, Seidon 120V Plus, Nepton 140XL, Nepton 280L, Glacer 240L, and products not more than colorably different from them.
>
> (2) CMI USA, Inc. and its subsidiaries and affiliated companies (collectively defined as "CMI"), as well as CMI's successors, assigns, officers, directors, agents, servants, employees, representatives and attorneys, and those persons in active concert or participation with them who receive notice of the order are hereby immediately and permanently restrained and enjoined, pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65(d), from making, using, offering for sale or selling in the United States, or importing into the United States, or causing to be made, used, offered for sale, or sold in the United States, or imported into the United States, the Infringing Products.
>
> (3) Cooler Master Co., Ltd. and its subsidiaries and affiliated companies (collectively defined as "Cooler Master"), as well as Cooler Master's successors, assigns, officers, directors, agents, servants, employees, representatives and attorneys, and those persons in active concert or participation with them who receive notice of the order are hereby immediately and permanently restrained and enjoined, pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65(d), from making, using, offering for sale or selling in the United States, or importing into the United States, or causing to be made, used, offered for sale, or sold in the United States, or imported into the United States, the Infringing Products.
>
> (4) Within 14 days of issuance of this order, CMI and Cooler Master shall provide written notice of this judgment and order, and the injunction ordered herein, to: their officers, directors, agents, servants, representatives, attorneys, employees, subsidiaries and affiliates, and those persons in active concert or participation with them. CMI and Cooler Master shall take whatever means are necessary or appropriate to ensure that this order is properly complied with.

(5) CMI and Cooler Master shall include a copy of this Order and the written notice in paragraph (6) below along with every bill of sale for the Infringing Products and in the boxes in which the Infringing Products are shipped or sold, regardless of where they are sold, indicating that they infringe the patents-in-suit, are subject to an injunction in the United States, and thus cannot be sold, offered for sale, imported, or used in the United States.

(6) The written notice to be provided along with every bill of sale and in the boxes in which the Infringing Products are shipped to or sold in the United States shall state:

> **This product is affected by a Permanent Injunction entered by the United States District Court for the Northern District of California in Civil Action No. 3:13-CV-00457-JST (copy enclosed). This product or its use infringes U.S. Patent Nos. 8,240,362 and 8,245,764, which are assigned to Asetek Danmark A/S. Accordingly, certain acts associated with this product are prohibited.**
>
> **<u>This product may not be sold, offered for sale, or used in the United States. Nor can this product be imported into the United States.</u>**

*Id.* at 33-34. Cooler Master filed a motion to intervene and suspend the injunction. ECF No. 349. The Court granted Cooler Master's motion to intervene but denied its request to suspend the injunction. ECF No. 359. Defendants appealed, and the Federal Circuit remanded for further record development and findings regarding the propriety of Cooler Master being subject to the injunction. *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1355-56 (Fed. Cir. 2017). The parties eventually reached a private settlement and stipulated to a consent judgment in which Defendants agreed to be bound by the injunction. *See* ECF No. 399 at 4-6. The Court retained jurisdiction to enforce the terms of the settlement agreement and final consent judgment. *Id.* at 6.

On May 10, 2021, Asetek filed the instant motion for contempt sanctions against Defendants for violation of the final consent judgment. ECF No. 400. Defendants filed an opposition, ECF No. 406, and Asetek replied, ECF No. 410. The Court held a hearing on the motion on July 27, 2021 and took the matter under submission. ECF No. 422.

## II.  LEGAL STANDARD

"A party seeking to enforce an injunction through a contempt proceeding must prove: (1) that the newly accused product is not more than colorably different from the product found to

3

infringe; and (2) that the newly accused product actually infringes." *Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 3:08-CV-714-MO, 2016 WL 3406232, at *2 (D. Or. June 15, 2016) (citing *TiVo v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011)). To determine whether a product is "more than colorably different," a court "must focus . . . on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." *TiVo*, 646 F.3d at 882. Specifically, "the court must make an inquiry into whether the modification[s] [are] significant." *Id.* "If the modification to the elements previously adjudged to infringe is significant, the new product is more than colorably different. . . . Conversely, lack of significant modifications means the new product is not more than colorably different." *Smith & Nephew*, 2016 WL 3406232, at *2 (citations omitted). "The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences." *TiVo*, 646 F.3d at 883 (citations omitted).

### III. DISCUSSION

Asetek argues that Defendants should be held in contempt because (1) Defendants' liquid cooling devices being sold in HP Omen gaming computers in the United States (the "Relaunched Devices") are not "more than colorably different" from the infringing Nepton Devices, and (2) the Relaunched Devices infringe claims 1-3, 6-17 and 18 of the '764 Patent. Defendants respond that the Relaunched Devices are more than colorably different from the Nepton Devices and do not infringe. Defendants also argue that Asetek should be estopped from arguing that the Relaunched Device infringes the '764 Patent because of its "extraordinary delay" in filing this motion, ECF No. 406 at 9-10, and that its claims are barred by the doctrine of laches based on the same delay, *id.* at 25-28.

#### A. The Doctrines of Estoppel and Laches Do Not Prevent Asetek from Seeking Sanctions

Defendants assert that they gave Asetek's counsel "a prototype sample" of the redesigned copper "thermal exchange chamber" in July 2016, *id.* at 7, and that "Cooler Master reasonably relied upon Asetek's silence after its receipt of the copper redesign sample and proceeded to invest in the production, marketing, and sales of the copper redesign to customers," *id.* at 28. Asetek

1  contends that (1) it told Cooler Master's counsel in February 2016 that a product with a copper or
2  plastic "sub-chamber" – like the Relaunched Devices – would infringe, ECF No. 410 at 4-5; (2)
3  Cooler Master's counsel delivered two[3] prototypes in July 2016 that were "still under
4  development" and never notified Asetek that Cooler Master was finalizing or planning to
5  commercialize the design, *id.* at 5; and (3) Cooler Master is precluded from raising an equitable
6  defense to this motion because it has "unclean hands" after not providing information regarding
7  sales of the Relaunched Devices in response to document requests in 2017, *id.* at 9.  The parties
8  agree that there were no conversations about Defendants' prototypes after they were given to
9  Asetek in July 2016.  However, Defendants argue that "Asetek cannot claim that it did not know
10 that the copper prototype sample provided by Cooler Master in July 2016 was for
11 commercialization" because "Cooler Master's counsel made clear to Asetek that the redesigned
12 copper thermal chamber was intended to replace the one used [in the] AMD Cooler on the market"
13 and "Cooler Master had no reason to provide the copper prototype to Asetek if that product was
14 not intended to go into production."  ECF No. 406 at 26-27.

15      To invoke judicial estoppel, Defendants must show (1) Asetek previously took a "clearly
16 inconsistent" position with the one now expressed, (2) the earlier position was accepted by the
17 court to which it was presented, and (3) Asetek "would derive an unfair advantage or impose an
18 unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742,
19 750-51 (2001).  The doctrine of equitable estoppel is a "creature of equity" that is intended to
20 prevent a party "from asserting his rights under a general technical rule of law, when he has so
21 conducted himself that it would be contrary to equity and good conscience." *Granite State Ins.*
22 *Co. v. Smart Modular Tech., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) (quoting John N. Pomeroy,
23 Equity Jurisprudence § 802 (Spencer W. Symons 5th ed. 1941)).  The Federal Circuit has held
24 that:

> [e]quitable estoppel has three elements: (1) the patentee engages in
> misleading conduct that leads the accused infringer to reasonably

---

[3] Robert F. McCauley's declaration in support of Asetek's motion for contempt sanctions describes CMI as "provid[ing] [Asetek] with *three* samples" "later in 2016."  ECF No. 400-2 ¶ 9 (emphasis added).  It is unnecessary for the purposes of this motion to determine exactly how many prototypes were given to Asetek.

> infer that the patentee does not intend to assert its patent against the accused infringer; (2) the accused infringer relies on that conduct; and (3) as a result of that reliance, the accused infringer would be materially prejudiced if the patentee is allowed to proceed with its infringement action.

*Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841, 853 (Fed. Cir. 2020) (citation omitted).

First, Asetek does not take a "clearly inconsistent" position with any position it took at trial. Defendants argue that the jury adopted Asetek's position at trial – and "[t]he Federal Circuit specifically cited these findings in its decision affirming the jury's verdict upholding the validity of the '764 patent" – that "the 'reservoir' is a 'single receptacle that is divided into an upper chamber and a lower chamber.'" ECF No. 406 at 13 (citation omitted) (emphasis omitted). Defendants contend that this is "clearly inconsistent" with Asetek's position that the Relaunched Devices infringe the '764 patent even if the copper sub-chamber is a "receptacle." However, the Court does not find these positions to be "clearly inconsistent." For example, it could be that even if the copper sub-chamber is a receptacle, that would not change the fact that the reservoir is a single receptacle divided into an upper chamber and lower chamber – the lower chamber would merely include or consist entirely of a smaller receptacle or sub-chamber. For example, nesting dolls contain many receptacles. But the smaller dolls – or receptacles – do not affect whether the biggest doll is a "single receptacle."

Second, the Court does not find that Asetek engaged in misleading conduct that led Defendants to reasonably infer that Asetek did not intend to assert its patent against them. The case law Defendants rely on is readily distinguishable because in each of those cases the patentee was clearly on notice of the allegedly infringing product. *See Derek & Constance Lee Corp. v. Kim Seng Co.*, 467 F. App'x 696, 698 (9th Cir. 2012) ("Great River knew that Kim Seng was selling products with packaging that Great River claimed violated the injunction as early as September 2008. Yet Great River failed to act for one full year."); *Seal Shield, LLC Otter Prod., LLC Treefrog Devs., Inc. v. Seal Shield, LLC*, No. 13-CV-2736-CAB (NLS), 2015 WL 11237464, at \*4 (S.D. Cal. July 31, 2015) ("Seal Shield notified Treefrog of its use of 'Life Proof' on the packaging [two years earlier] . . . when it attached images of the packaging to its complaint."); *i4i Ltd. P'ship v. Microsoft Corp.*, 398 F. Supp. 3d 90, 94 (E.D. Tex. 2019) (Patentee "stated [nearly

6

1    three years earlier] . . . that 'we have no doubt that Microsoft sold many infringing Word

2    products.'"). Here, Defendants gave Asetek multiple "prototype samples" in July 2016, and told

3    Asetek twice that the samples "ha[d] not made [it] into production yet." *See* ECF No. 409-2 at 3,

4    4. Asetek contends that it "did not know until about September 2020 that Cooler Master was

5    selling the [Relaunched Devices]." ECF No. 400 at 11. The Court concludes that Asetek's silence

6    in response to prototypes that were still in development was not enough to lead Defendants to

7    reasonably infer that Asetek did not intend to assert its patent against them. Asetek is not

8    estopped from seeking sanctions and the Court need not reach Asetek's other arguments on this

9    point.

10   For similar reasons, Asetek's motion is not barred by the doctrine of laches.[4] "To establish

11   laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself."

12   *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). Asetek asserts that it

13   informed CMI in February 2016 that a copper sub-chamber was not a non-infringing design. ECF

14   No. 400-2 ¶ 9. Furthermore, although CMI provided different prototypes to Asetek for evaluation

15   in July 2016, CMI described the samples as "prototypes" that were "still in development" and not

16   being commercialized. *Id.* The record is at best unclear whether CMI adequately put Asetek on

17   notice of the allegedly infringing conduct. "[CMI] bears the burden of demonstrating laches,"

18   *24/7 Customer, Inc. v. 24-7 Intouch*, No. 5:14-CV-02561-EJD, 2015 WL 1522236, at *3 (N.D.

19   Cal. Mar. 31, 2015), and the Court concludes that CMI has not met its burden.

20   **B.    The Relaunched Devices are More Than Colorably Different from the Nepton
21          Devices**

22   The dispute between the parties regarding whether the Relaunched Devices are colorably

23   different from the Nepton Devices comes down to whether including a receptacle within or as a

24   substitute for the thermal exchange chamber is a significant modification from the infringing

25   Nepton Devices. Asetek argues that Defendants cannot change the definition of a "thermal

26   exchange chamber," which Claim 15 recites as "define[d]" by "the intermediate member and the

27

28   [4] Asetek does not respond to CMI's argument concerning laches.

heat exchanging interface." ECF No. 400 at 12-16.  As Asetek clarified at oral argument, it contends that even if the copper enclosure is a receptacle, it is a sub-chamber of the thermal exchange chamber and not a significant modification.  In other words, "that the [Relaunched Devices] also include[] another unrecited chamber/receptacle – i.e., the copper sub-chamber – *within* the recited 'thermal exchange chamber' is irrelevant to the asserted claims, which simply recite a 'thermal exchange chamber' as part of the dual-chambered 'reservoir' and do not specify the internal configuration of the 'thermal exchange chamber.'"  ECF No. 410 at 15.  Defendants assert that the copper enclosure is a significant modification from the Nepton Devices because it causes the Relaunched Devices to be composed of two receptacles and so fails to satisfy the single receptacle requirement of "reservoir."  *See, e.g.*, ECF No. 406 at 12, 20.  Defendants also compare the Relaunched Devices to the Ryu prior art that Asetek distinguished at trial.  *Id.* at 15-23.

In their verdict form, the jury found that the Nepton Devices were different from the prior art at the time of their invention in part because "the claimed 'reservoir' in Asetek's invention is a single receptacle that is divided into an upper chamber and a lower chamber, with the upper chamber providing the pumping function and the lower chamber providing the thermal exchange function."  ECF No. 219 at 5.  It is not clear, because it was never presented to the jury, whether the lower "chamber" could be a smaller receptacle within the "single receptacle" of the reservoir, or whether another receptacle would necessarily violate the reservoir's status as a "single receptacle."  However, Judge Chen explained in the claim construction order that "the fact that the claim term is 'reservoir' (singular) and not 'reservoirs' (plural) indicates that *a reservoir is only one receptacle and not many*."  ECF No. 35 at 8 (emphasis added).  This implies that the Relaunched Devices' copper receptacle within the lower sub-chamber could cause it to fall outside of the '764 patent.  The Court therefore concludes that Asetek has not carried its burden of demonstrating by "clear and convincing" evidence that the Relaunched Devices are not more than colorably different from the Nepton Devices.  Given the construction of "reservoir" as a single receptacle, the additional receptacle in the Relaunched Devices is a "modification to the elements previously adjudged to infringe [that] is significant."  *Smith & Nephew*, 2016 WL 3406232, at *2.

It is "possible that, in a new infringement proceeding, a fact finder could conclude that" the

1 Relaunched Device meets the "reservoir" limitation and that the Relaunched Devices infringe the
2 asserted claims of the '764 patent, "but that should not be decided in a contempt proceeding."
3 *TiVo*, 646 F.3d at 884.  Having determined that the products are more than colorably different, the
4 Court will not consider whether the Relaunched Devices infringe on the asserted patent claims.
5 *See id.* ("vacat[ing] the district court's finding of contempt for violation of the infringement
6 provision and remand[ing] to the district court to make [the] factual determination" of whether the
7 allegedly infringing device was "more than colorably different from the original one").

## CONCLUSION

Asetek's motion for contempt sanctions is DENIED.

**IT IS SO ORDERED.**

Dated:  August 9, 2021



JON S. TIGAR
United States District Judge